[No. 29430-0-I.   Division One.   January 19, 1993.]

LARRY W. ISHMAEL, ET AL, *Appellants*, v. KING COUNTY, ET AL, *Respondents*.

*J. Richard Aramburu,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *H. Kevin Wright, Deputy; Kevin P. Hanchett, Timothy Gavin,* and *Lasher Holzapfel Sperry & Ebberson,* for respondents.

BAKER, J. — This case concerns the nature and scope of a King County zoning and hearing examiner's (Hearing Examiner) authority under the King County Code (KCC) to review a zoning adjuster's decision on a conditional use permit. We hold that the Hearing Examiner exceeded his authority under the KCC when he reversed the zoning adjuster's decision granting a conditional use permit to appellants. Accordingly, we reverse the trial court and the Hearing Examiner and reinstate the decision of the zoning adjuster.

I

The appellants (Ishmael) applied for a conditional use permit for a child care facility designed to accommodate approximately 150 children on a 1.72-acre parcel located on the Sammamish Plateau. King County issued a mitigated determination of nonsignificance (DNS) pursuant to the State Environmental Policy Act of 1971 (SEPA).[1] The agency required three transportation related mitigation measures. The DNS was not appealed.

The County Parks, Planning and Resources Department prepared a preliminary report to the zoning adjuster regarding the project. That report identified issues to be considered by the zoning adjuster, including the adequacy of parking, play areas, and landscaping buffers, and whether the proposed hours of operation were excessive.

After a public hearing, the zoning adjuster conditionally approved the project, concluding in part as follows:

> 1. The project site is located in the King County Comprehensive Plan as an urban area, and "it is believed this use is appropriate for the area."
> 2. Traffic issues were adequately addressed in the study submitted by the applicant and reviewed by County staff. "No substantive information was provided by those in opposition to the proposal which disproved the results of the traffic study."
> 3. Noise impacts on surrounding properties will be insignificant if the play areas are constructed and operated in accordance with the conditions imposed.

---

[1]Under SEPA, an agency may issue a DNS if it finds that the action will not have a significant adverse impact on the environment. *Norway Hill Preserv. & Protec. Ass'n v. King Cy. Coun.*, 87 Wn.2d 267, 278, 552 P.2d 674 (1976).

4. Due to the shape and topography of the site, the number of children allowed on the site at any one time should not exceed 145. Accordingly, the size of the proposed structure in phases 2 and 3 should not exceed 7,200 square feet.

5. The applicants have proposed to locate stationary play equipment at least 40 feet from any property line, twice the distance required by the County code.

6. The hours of operation should be limited to be compatible with nearby residential uses and, at the same time be extensive enough to provide convenient daycare for the community.

7. Existing trees in the northwest and northeast corners of the site should be retained to the extent possible. Additional landscaping should be planted to buffer the daycare facility from adjoining properties. A hedge should be planted to screen the parking lots from 247th Place Southeast.

Consistent with the provisions of KCC 21.58.070(A), the notice of the right to appeal the zoning adjuster's decision stated that appeal arguments must be based on the record before the zoning adjuster.

Two parties appealed the zoning adjuster's decision. One notice of appeal included a 6-page petition signed by area residents stating that they did not intend to use the proposed day-care facility. The petition was submitted to refute a factual assumption in the traffic study relied upon by the zoning adjuster which estimated that 80 percent of the anticipated trips would already be on the local street system. In addition, a 5-page traffic report prepared to refute the traffic study submitted by the applicants was submitted to the Hearing Examiner.

Following a public hearing, the Hearing Examiner reversed the zoning adjuster. The Superior Court affirmed the decision of the Hearing Examiner on grounds that the Examiner's decision was not arbitrary or capricious and that it was not improper for the Hearing Examiner to consider the new traffic study for the limited purpose of evaluating whether a remand to the zoning adjuster was necessary.

II

The Ishmaels sought review of the administrative actions of the zoning adjuster and Hearing Examiner by writ of certiorari. Judicial review pursuant to a writ of certiorari is

governed by statute.[2] The first three subsections of the certiorari statute govern the jurisdiction and the legality of the lower tribunal's decision. The last two subsections govern the court's review of factual matters and encompass, essentially, the arbitrary and capricious standard used in nonwrit cases. *Murphy v. Seattle*, 32 Wn. App. 386, 390, 647 P.2d 540 (1982).

KCC 21.58.070 sets forth the scope of the Hearing Examiner's authority in reviewing the decision of the zoning adjuster as follows:

> **21.58.070 Appeal — Examiner's authority.** A. For appeals from decisions of the zoning adjustor or manager on variances or of the zoning adjustor on conditional use permits or variances, the examiner's consideration shall be based upon the record only. If, after examination of the written appeal and the record, the examiner determines that:
> 1. A material error in fact or procedure may exist in the record, the examiner shall remand the proceeding to the responsible official for reconsideration; or
> 2. The decision of the responsible official is arbitrary and capricious or is based upon an erroneous conclusion, the examiner may reverse or affirm, wholly or in part, or may modify the order, requirement, decision or determination appealed from.

The Hearing Examiner thus has the authority to reverse the decision of a zoning adjuster if the adjuster's decision is arbitrary and capricious or "*is based upon an erroneous conclusion*". (Italics ours.) *See* KCC 21.58.070(A)(2). The dispositive issue on appeal is whether the phrase "based upon an

---

[2]RCW 7.16.120 provides:

"The questions involving the merits to be determined by the court upon the hearing are:

"(1) Whether the body or officer had jurisdiction of the subject matter of the determination under review.

"(2) Whether the authority, conferred upon the body or officer in relation to that subject matter, has been pursued in the mode required by law, in order to authorize it or to make the determination.

"(3) Whether, in making the determination, any rule of law affecting the rights of the parties thereto has been violated to the prejudice of the relator.

"(4) Whether there was any competent proof of all the facts necessary to be proved, in order to authorize the making of the determination.

"(5) Whether the factual determinations were supported by substantial evidence."

erroneous conclusion" vests in the Hearing Examiner the authority to reverse for erroneous factual determinations or is limited to erroneous conclusions *of law.*

The Ishmaels argue that the phrase "based upon an erroneous conclusion" vests in the Hearing Examiner the authority to reverse only for errors of law. They assert that the Hearing Examiner does not have the authority to substitute his judgment for that of the zoning adjuster, but rather is limited by the code to determining whether the adjuster's decision is arbitrary and capricious or based on a misinterpretation of the code.

King County argues that the Hearing Examiner is free to substitute his judgment for that of the adjuster. The County contends that "erroneous conclusion" confers a broader standard of review than the clearly erroneous standard[3] typically applied to decisions under SEPA which warrant heightened scrutiny.

We conclude that the phrase "based upon an erroneous conclusion" refers to erroneous conclusions of law or misinterpretations of the code rather than erroneous factual conclusions. We agree with the Ishmaels that to interpret the code otherwise would render the phrase "arbitrary and capricious" meaningless. "Principles of statutory construction require that we give effect to all of the language used." *In re Marriage of Timmons,* 94 Wn.2d 594, 600, 617 P.2d 1032 (1980).

Because King County concedes that the zoning adjuster's decision was not arbitrary or capricious, we consider only whether the Hearing Examiner properly limited his review to a determination of whether the zoning adjuster's decision was contrary to law. The Hearing Examiner concluded in part as follows:

---

[3]Under the clearly erroneous standard of review, the court "does not substitute its judgment for that of the administrative body" and may find a decision "clearly erroneous" only when it is " ' "left with the definite and firm conviction that a mistake has been committed." ' " *Polygon Corp. v. Seattle,* 90 Wn.2d 59, 69, 578 P.2d 1309 (1978) (quoting *Ancheta v. Daly,* 77 Wn.2d 255, 259-60, 461 P.2d 531 (1969)).

The assurance of compatibility is the primary purpose of the conditional use permit. It is my conclusion that such an assurance cannot be made in the instant case. . . . It is clearly erroneous to conclude that such a facility bears any resemblance to typical single family homes in the neighborhood. . . . I cannot conclude that the use of this magnitude is compatible with single family homes in a semi-rural environment. Despite some evidence that might support the Adjustor's decision, I am left with a firm and abiding conviction that an error has been made.

We conclude that the Hearing Examiner applied an incorrect standard of review and in effect substituted his judgment on the facts for that of the adjuster. Accordingly, because the Examiner did not limit his review of the adjuster's decision to a determination of whether it was arbitrary and capricious or based on an erroneous conclusion of law, we hold that the Hearing Examiner exceeded the scope of the authority vested in that office under KCC 21.58.070.

The Ishmaels also argue that the Hearing Examiner improperly considered a petition signed by individuals opposing the project and stating they would not use the facility, and a traffic study introduced to refute the study already in the record because this evidence was not part of the record below.

King County responds that the Hearing Examiner received and considered the traffic analysis and petition for the limited purpose of determining whether a material error of fact existed in the record before the zoning adjuster, necessitating a remand under KCC 21.58.070. The County contends that any error in admitting the traffic study and petition for this limited purpose is harmless because the Hearing Examiner's reversal was based on grounds other than the information in either the traffic study or the petition.

■ KCC 21.58.070 specifically directs that "the examiner's consideration shall be based *upon the record only.*" (Italics ours.) KCC 21.58.070. Thus, the code clearly relegates the fact-finding function of the decision-making process to the zoning adjuster and explicitly limits the Examiner's review *to the record* before the zoning adjuster. The Ishmaels' traffic study was available for review and com-

472

ment prior to the hearing before the zoning adjuster; therefore, interested parties had the opportunity to refute the study or bring any factual errors to the zoning adjuster's attention. Accordingly, we hold that the Hearing Examiner erred in considering this evidence even for the limited purpose of determining whether a factual error existed in the record before the zoning adjuster.

We reverse the trial court and the Hearing Examiner and reinstate the zoning adjuster's decision.

COLEMAN and FORREST, JJ., concur.